SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samuel Martin, | No. CV 11-0650-PHX-DGC (JFM) |
| Plaintiff, | |
| vs. | **ORDER** |
| Corrections Corporation of America, et al., | |
| Defendants. | |

Plaintiff Samuel Martin, a California Department of Corrections and Rehabilitation (CDCR) inmate who was confined in the Red Rock Correctional Center (RRCC) of the Corrections Corporation of America (CCA), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. (Docs. 1, 10.) Defendant Lapre moves to dismiss the only remaining claim, asserting that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA).[1] (Doc. 15.) The Court will grant the motion, dismiss the remaining claim without prejudice, and terminate the action.

**I.    Background**

In his First Amended Complaint, Plaintiff alleged that on November 3, 2010, he was on his way out of his unit to go to Education, which required him to submit to a pat-down search before leaving the building. Defendant was conducting the searches and reached

---

[1]The Court issued a Notice pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003), advising Plaintiff of his obligation to respond. (Doc. 16.)

between Plaintiff's legs and grabbed and squeezed his penis. At Plaintiff's request, Warden Rogers was summoned, and Plaintiff told him about Defendant's actions. Rogers said that Lapree was conducting a thorough search and told Plaintiff to continue to Education. Rogers talked to Head Warden Stolc and Stolc told Rogers to take Plaintiff out of Education and have him go to medical for examination. Plaintiff was then placed in administrative segregation. Plaintiff asserts that as a result of Defendant's actions, he suffers from "psychosexual Bewilderment, mood swings," and insomnia. Plaintiff contends that his right to privacy was violated pursuant to a policy of pat-down searches that involved the touching, groping, or manipulation of genitalia. (Id.) The Court directed Defendant to answer. (Doc. 11.)[2]

Defendant moves to dismiss on the ground that Plaintiff failed to exhaust his administrative remedies as to any claim. (Doc. 15.) Plaintiff opposes the motion.[3]

## II. Motion to Dismiss

### A. Legal Standard—Exhaustion of Administrative Remedies

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)

---

[2]On screening the Court dismissed Rogers, CCA, and additional claims. (Doc. 11.)

[3]In support of their motion, Defendant submits the affidavit of G. Christie, Temporary Grievance Coordinator at RRCC (Doc. 15, Ex. 1, Christie Aff.), with attachments: *Grievance Procedures for CDCR Inmates* (id., Ex. 1, Attach. A) and grievance documents (id., Exs. 1-B – 1-H). Plaintiff submits his Response (Doc. 19), with exhibits.

1 motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-
2 20.  Further, a court has broad discretion as to the method to be used in resolving the factual
3 dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th
4 Cir. 1988) (quotation omitted).

### B. Parties' Contentions

#### 1. Defendants

Defendants assert that the administrative remedies procedure for CDCR inmates in CCA facilities is set forth in LPCC Policy 14-101, *Grievance Procedures for CDCR Inmates*. (Doc. 15, Ex. 1, Christie Aff. ¶ 4.)  Policy 14-101, effective September 8, 2008, was in effect at the time of Plaintiff's initial intake at RRCC on February 2, 2010, and at all relevant times; it is modeled after and incorporates the timelines and requirements set forth in Title 15 of the California Code of Regulations. (Id. ¶ 5, citing Cal. Code of Regulations 15 § 3084.)

The grievance process has four levels. (Id. ¶ 11.) Except for emergency grievances and appeals of CDCR decisions, inmates must first submit questions, disputes, or complaints on an Informal Resolution Form (Form 14-101A) within 15 work days of the incident. (Id. ¶ 11(a).)  Unless a time extension is granted due to unusual circumstances, a CDCR inmate will receive a response to an informal resolution within 10 working days of submitting Form 14-101A. (Id.)  If not satisfied, the inmate can file a Level One formal grievance on Form 14-101B within 15 working days of receipt of the response to his informal resolution, attaching a copy of the informal resolution and response. (Id. ¶ 11(b).) The grievance officer will assign a number and document the grievance. (Id.)  The facility Warden or Administrative Duty Officer then reviews each response before it is provided to the inmate. (Id.) Unless unusual circumstances necessitate a time extension, a CDCR inmate will receive a response to a Level One formal grievance within 30 working days of submission of a proper and complete Form 14-101B.  (Id.)

If an inmate is unsatisfied with the response to the formal grievance, he may, within 15 working days of receipt of the response, submit a Level Two appeal to the COCF Appeals

1  Coordinator, pursuant to 15 Cal. Code of Regulations § 3084. (Id. ¶ 11(c).) If the inmate is
2  still unsatisfied with the COCF decision, he may submit a Level Three formal grievance to
3  the COCF Director within 15 working days of receipt of the Level Two response. (Id.
4  ¶ 11(d).)

5  Defendant asserts that if an inmate fails to properly submit a Level One formal
6  grievance, it may be rejected. A Grievance may be screened and rejected by the Grievance
7  Coordinator for a variety of reasons, including that it fails to include evidence of attempted
8  informal resolution or it is incomplete or untimely.  If a grievance is screened, the inmate is
9  notified of any deficiencies and is permitted to resubmit the formal grievance, provided the
10 time for submission of a Level One formal grievance has not expired.  However, aside from
11 notification of the deficiencies, an improperly submitted formal grievance requires no
12 investigation or formal response to be provided. (Id. ¶ 14.)  If an inmate fails to follow this
13 procedure or omits any part of it, he has not exhausted the administrative remedies available
14 at RRCC.

15 Christie attests to reviewing the facility Grievance Logs for 2010 and 2011 for
16 Plaintiff. (Id. ¶ 17.) The 14-101(B) form dated January 4, 2011, submitted as an exhibit to
17 the Amended Complaint, was received by the grievance office; however, it was screened
18 directly back to Plaintiff as being incomplete and improperly submitted because Plaintiff
19 bypassed the first level of grievance which is the 14-101(A) form. (Id. ¶ 18.) "Need 14-
20 101(A) first" is noted on his improperly filed 14-101(B) Form. (Id., Attach. C.) According
21 to Christie, the review of the grievance logs indicate that Plaintiff never re-submitted any
22 grievance regarding this issue on the proper 14-l0l(A) form. (Id. ¶ 19.) And the grievance
23 is on its face untimely, as it was submitted well after the 15 day limit had expired. (Id. ¶ 20.)

24 Christie also attests that although Plaintiff claims RRCC staff refused to provide him
25 with proper paper work to submit or appeal a request for administrative relief, Policy 14-101
26 provides that the denial of access to the grievance procedures is a grievable matter. (Id.
27 ¶¶ 22-23, see Attach. A sectíon I4-101.4(F)(3).) Christie's review of the grievance record
28 indicates that Plaintiff never grieved the issue of being denied access. (Id. ¶ 24.)

- 4 -

**2.     Plaintiff**

Plaintiff asserts that he was placed in Administrative Segregation on the ground that he "presents an immediate threat to the safety of self or others and endangers institution security." (Doc. 19 at 1.) He was not placed there for jeopardizing the integrity of an investigation. (Id.) He asserts that he was not provided an Investigative Employee as required by Title 15 § 3318, who is designated to gather information for the senior hearing officer or hearing committee as described in § 3315(d)(1)(A). (Doc. 19 at 1.) He asserts that he was not properly advised of all his rights, including the right to file or exhaust administrative remedies, in violation of Equal Protection.. (Id. at 2.)

**3.     Reply**

Defendant reasserts that the January 4, 2011 grievance does not constitute proper exhaustion because Plaintiff bypassed the informal resolution level. (Doc. 20 at 3.) They also argue that the grievance is a request for a "128-G" and incident statements and not, in fact, a grievance about alleged sexual misconduct. (Id.) Defendant contends that inmates can use administrative remedies while in administrative segregation and Plaintiff received a copy of RRCC grievance policies and procedures. (Id., ref. Doc. 15, Ex. 1, Attach. B.)

Defendant also argues that Plaintiff is improperly attempting to add new claims through his allegations that he was not provided an investigative employee. (Id. at 5.) An investigative employee is assigned to investigate a disciplinary action when there is a "serious rule violation." Cal. Code Regs. 15 § 3315(d)(1)(A). Plaintiff was placed in administrative segregation to protect the integrity of the investigation; he was not charged with a "serious rule violation." (Id. at 6.) Defendant argues that Plaintiff fails to state an equal protection claim because he does not allege that he was treated differently than others similarly situated. (Id. at 6-7.)

**C.     Analysis**

The Court will grant Defendant's motion to dismiss. Defendant has met his burden to establish the availability of an administrative-remedy procedure and that Plaintiff failed to use that procedure to exhaust his remedies. Furthermore, Plaintiff fails to establish a

1 sufficient excuse for not exhausting his remedies

2 The parties submit Plaintiff's Formal Grievance, dated January 4, 2011, stating that
3 Plaintiff was placed in Administrative Segregation on November 3, 2010, after he reported
4 staff sexual misconduct. (Doc. 15, Ex. 1, Attach. C; Doc. 19 at 4.) It also states that Plaintiff
5 was "kicked out" on November 10 and asked for 128-G and incident report so that he could
6 start his complaint against Defendant. (Id.) The response noted on the form is "Need 14-
7 101(A) first." Plaintiff does not claim to have submitted any additional grievance documents
8 to prison officials on this matter. As Defendant notes, the formal grievance without the
9 initial step of an informal grievance does not constitute proper exhaustion. Moreover, the
10 January 4 grievance requests investigative documents so that Plaintiff could *begin* his
11 complaint against Defendant; because of the remedy sought in the grievance, it does not
12 suffice to put prison officials on notice of the complaint against Defendant, see Griffin, 557
13 F.3d at 1120 ("a grievance suffices if it alerts the prison to the nature of the wrong for which
14 redress is sought"), and it is plainly out of time frames regarding the November 3, 2010
15 incident.

16 The Court rejects Plaintiff's remaining arguments that he was excused from
17 exhausting his administrative remedies. Although Plaintiff claims that he was not properly
18 advised of his right to file a grievance, Defendant provides a signed acknowledgment that
19 Plaintiff received the CCA/RRCC orientation Handbook. (Doc. 15, Ex. 1, Attach. B.) The
20 Orientation Handbook contains a summary of the grievance policies and procedures. (Id.,
21 Ex. 1, Christie Aff. ¶ 6.) And the returned formal grievance specifically advised Plaintiff to
22 file an informal grievance first. Plaintiff also claims that he was not provided an
23 investigative employee, but Plaintiff was not charged with a disciplinary offense. See Cal.
24 Code Regs. 15 § 3315(a),(d). In addition, Plaintiff acknowledges in his First Amended
25 Complaint that he did not exhaust remedies and asserts that "the staff refuse to provide me
26 with proper paperwork to submit or appeal a request for Administrative Relief." (Doc. 10
27 at 3.) But Plaintiff does not allege any specific information regarding his attempts to obtain
28 the necessary paperwork. His general assertion that he did not receive paperwork is

- 6 -

insufficient to establish the unavailability of the grievance process.

In sum, Plaintiff fails to establish that he was excused from exhausting his administrative remedies. The Court will dismiss his remaining claim without prejudice.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion to Dismiss (Doc. 15).

(2) Defendant's Motion to Dismiss (Doc. 15) is **granted**, and the remaining claims are **dismissed without prejudice** for failure to exhaust administrative remedies.

(3) The action is terminated, and the Clerk of Court must enter judgment accordingly.

(4) For the reasons set forth herein, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from the judgment in this action would not be taken in good faith.

DATED this 6th day of March, 2012.

_David G. Campbell_
United States District Judge